UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KARIN YANIV,<br><br>          Plaintiff,<br><br>     v.<br><br>LOCAL 4811, INTERNATIONAL UN-<br>ION, UNITED AUTOMOBILE, AERO-<br>SPACE, AND AGRICULTURAL IMPLE-<br>MENT WORKERS OF AMERICA,<br><br>          Defendant. | Case No.  25-cv-00819-AMO (AGT)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 49, 50 |

Defendant Local 4811, International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the Union) seeks to keep the names and contact information of its members designated as "Highly Confidential – Attorneys' Eyes Only" ("AEO") under the operative protective order. Dkt. 49-1 at 7.[1] The plaintiff, Karin Yaniv, argues that the Court should deny the Union's request. Dkt. 51 at 4. The Court finds that the disputed materials should remain subject to the protective order but should be redesignated as "Confidential" and not as "AEO."

Generally, discovery materials are public. *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999). However, Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate

---

[1] Citations to page numbers in this order correspond to the ECF page numbers at the top of each page.

and what degree of protection is required," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), and allows a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

When considering a motion to retain confidentiality under a protective order, a court must discern whether "particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop of Portland in Oregon,* 661 F.3d 417, 424 (9th Cir. 2011) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). The burden is on the moving party to show this particularized harm. *In re Roman Catholic Archbishop*, 661 F.3d at 424.

The Court has already found good cause to protect the names and contact information of non-party Union members from public disclosure. Dkt. 42 (discovery order). *See also* dkt. 49-1 at 5 (motion, citing same). The Court now finds that public disclosure of the personally identifiable information of non-parties would result in particularized harm to those individuals. *See, e.g.*, *Chavez-Deremer v. Coway USA, Inc.*, No. 24-CV-08156, 2025 WL 3704376, at *4 (C.D. Cal. Dec. 22, 2025) (finding particularized harm and entering protective order to shield third-party employee information); *Yith v. Nielsen*, No. 14-cv-01875, 2019 WL 2567290, at *7 (E.D. Cal. June 21, 2019) ("the public release of personal identifying information . . . of individuals who are completely unrelated to this case, would harm those individuals").

If particularized harm will result, then the court weighs whether the balance of public and private interest tilts in favor of disclosure. *Phillips*, 307 F.3d at 1211. The Ninth Circuit "ha[s] directed courts . . . to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995)." *In re Roman Catholic Archbishop*,

661 F.3d at 424 (citing *Phillips*, 307 F.3d at 1211)). The *Glenmede* factors are, "1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public." *Glenmede*, 56 F.3d at 483.

The *Glenmede* factors here weigh in favor of retaining materials with the personally identifiable information of non-parties under the protective order. Disclosure of the information will harm privacy interests of and cause embarrassment to non-parties to this case. The sharing of information among litigants will not be affected by a protective order as no documents are sought to be withheld: it is undisputed that the Union has already produced the information to Yaniv. *See* dkt. 49-1 at 5–7; dkt. 51 at 4. The Union is not a public entity and, while it is arguable that this case involves issues of public importance, the identities of non-party Union members are not themselves matters of public interest. There is no indication that the materials are sought for an improper purpose nor are the materials important to public health or safety.

The Court is, however, not persuaded that the materials must remain "AEO." The operative protective order in this case includes both "AEO" and "Confidential" designations. *See* dkt. 44. Relevant here, disclosure of "Confidential" materials is limited to Yaniv's counsel of record, certain experts, the court, court reporters and similar vendors, and certain witnesses. *See id.* ¶ 7.2. The gravamen of the Union's motion goes to risks of unfettered *public*

disclosure, but the Union does not provide any rationale to keep the materials "AEO" instead of "Confidential," *see* dkt. 49-1, nor has the Court discovered one. Additionally, Yaniv notes that she proposed to keep this information confidential during the parties' discussions prior to briefing this issue. *See* dkt. 51 at 3. Accordingly, the names and contact information, along with other personally identifiable information, of non-parties to this action should remain subject to the protective order but should be redesignated "Confidential."

The parties devote much of their briefing to arguing over the applicability of the First Amendment. The Union argues that unrestricted disclosure would chill Union members' First Amendment rights. *E.g.*, dkt. 49-1 at 7. Yaniv responds that the First Amendment is inapplicable. Dkt. 51 at 6.

The cases cited by the Union to show the applicability of the First Amendment in this context, *see* dkt. 49-1 at 7–9, are distinguishable and inapposite: they dealt with parties who fought over the compelled disclosure of information. *See, e.g.*, *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (plaintiff resisted disclosure); *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983) (defendant resisted disclosure); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1143–45 (9th Cir. 2009) (defendant resisted disclosure). It is undisputed that in this case, the Union has already disclosed the information to Yaniv. *See* dkt. 49-1 at 7; dkt. 51 at 4. The dispute is over the proper confidentiality designation, not over whether the Union should be compelled to disclose the information at all.

Additionally, it may be correct that an unrestricted disclosure would endanger the First Amendment rights of non-party Union members. Even if that were the case, the Court is not contemplating unrestricted, public disclosure here. The materials are to remain subject to the protective order and only usable in connection with this litigation. *See* dkt. 44 ¶ 7.1.

Finally, Yaniv generally argues that the Union is overinclusive in its designations. Dkt. 51 at 11. This Court found only that personally identifiable information (i.e., names, contact information, etc.) of non-party Union members was protected. If concerns regarding overinclusive designations remain after the Union redesignates those materials, the parties are directed to meet and confer in-person or via videoconferencing platform.[2] *See* AGT Civil Standing Order § VII.B. If disputes remain after a fulsome meet and confer, then the parties may submit a joint discovery letter on this topic. *See id.*

Lastly, the Union's request for judicial notice, dkt. 50, is denied. The Court's decision did not rely on these documents.

This order resolves dkts. 49 and 50.

**IT IS SO ORDERED.**

Dated: January 28, 2026

Alex G. Tse
United States Magistrate Judge

---

[2] Both parties represent that they met and conferred telephonically prior to filing this briefing. Dkt. 49-3 ¶ 7; dkt. 51-1 ¶ 17. However, the Court's Civil Standing Order requires meet and confers to take place in person or via a videoconferencing platform. *See* AGT Civil Standing Order § VII.B. The parties are reminded to abide by the Standing Order's meet and confer requirements in future.