Thomas Myers (SBN 120674)
Email: myers@smithmyerslaw.com
SMITH & MYERS LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: 213.613.2380
Facsimile: 213.613.2395

Danielle R. Acker Susanj (pro hac vice)
PA Attorney I.D. No. 316208
Email: drasusanj@fairnesscenter.org
Jonathan R. Vaitl (pro hac vice)
PA Attorney I.D. No. 324164
Email: jrvaitl@fairnesscenter.org
Nathan J. McGrath (pro hac vice)
PA Attorney I.D. No. 308845
Email: njmcgrath@fairnesscenter.org
Anthony R. Holtzman (pro hac vice)
PA Attorney I.D. No. 200053
Email: arholtzman@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424

Attorneys for Plaintiff Karin Yaniv

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| KARIN YANIV,<br><br>            Plaintiff,<br><br>      v.<br><br>LOCAL 4811, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,<br><br>            Defendant. | **Case No. 4:25-cv-00819-AMO (AGTx)**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND OPINIONS OF DEFENDANT'S EXPERT BARRY TRACHTENBERG**<br><br>Date:   July 16, 2026<br>Time:   2:00 p.m.<br>Ctrm:  Oakland, Ctrm 5<br><br>Judge: The Honorable Araceli Martínez-Olguín |

1

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 16, 2026, at 2:00 p.m., or as soon thereafter as available, in the courtroom of the Honorable Araceli Martínez-Olguín, located at Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 5, 1301 Clay Street, Oakland, CA 94612, Plaintiff Karin Yaniv will and hereby does move for an order that would exclude the testimony of Barry Trachtenberg ("Trachtenberg"), who is proffered by Defendant Local 4811, International Union, United Automobile, Aerospace Implement Workers of America ("Union") as an expert witness, on the grounds that, in presenting his testimony, Trachtenberg would address issues that are not relevant to Plaintiff's claims or the Union's defenses and, therefore, not helpful to the jury, improperly assert legal conclusions, and improperly usurp the function of the jury by weighing evidence and making credibility determinations.[1]

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the accompanying Declaration of Jonathan R. Vaitl and the exhibits that are attached to it, any reply or other supplemental briefing and/or evidence submitted in relation to the Motion, and any oral argument of counsel with regard to the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Trachtenberg's expert report ("Report") is part history narrative about irrelevant issues and part legal brief in support of the Union's position in this case. On both fronts, Trachtenberg's opinion would constitute improper and inadmissible expert testimony and is nothing more than an attempt by the Union to present its theory of the case from the stand through the guise of "expert" testimony. "Where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006–07 (S.D. Cal. 2018).

---

[1] Plaintiff notes that she is not asking the Court to perform its "gatekeeping" function under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In other words, Plaintiff is not asking the Court to determine Trachtenberg's qualifications, the methodology he used, or the reliability of his opinion. This Motion is therefore not a *Daubert* motion, as that type of motion is traditionally understood.

As discussed in more detail below, Trachtenberg dedicates much of his report to defining antisemitism and discussing how it relates to, and differs from, anti-Zionism and support for the Boycott, Divestment, and Sanctions ("BDS") movement. That part is the "history" portion of the Report, which is not relevant to the issues in this case because, in asserting her claims, Plaintiff does not suggest that anti-Zionism or support for BDS are forms of antisemitism, let alone rely on the theory that any of those concepts are the same. Nor does the relationship between antisemitism, on the one hand, and anti-Zionism or support for BDS, on the other hand, pertain to any of the Union's defenses.

In the remainder of his Report, Trachtenberg reviews select documents and purports to opine on whether, based on those documents, the Union's conduct constituted discrimination against Plaintiff based on her Jewish religion or Israeli national origin. In doing so, he makes credibility determinations, weighs evidence, and speculates as to the motives and intent of the Union's officers and members. But neither his legal conclusions nor his credibility determinations or weighing of the evidence are proper subjects of expert testimony. It is the Court's role alone, *not* Trachtenberg's, to make legal conclusions and determine which witnesses to believe. In taking his approach, Trachtenberg functions as an advocate, not an expert, and the Court should not permit the Union to present its legal arguments to the jury through an expert mouthpiece.

Plaintiff respectfully requests, therefore, that the Court exclude Trachtenberg from testifying at trial.

## II.  ARGUMENT

### A.  In Large Part, Trachtenberg's Opinion Focuses on Irrelevant Issues

The court should exclude Trachtenberg's testimony because, in large part, his opinion focuses on issues that are not relevant and, therefore, would not be helpful to the jury.

Under Federal Rule of Evidence 401, evidence is relevant only if "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Similarly, expert testimony is admissible only if it "will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). "Expert testimony

which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. "This requirement is more stringent than the relevancy requirement of Rule 402 of the Federal Rules of Evidence, 'reflecting the special dangers inherent in scientific expert testimony.'" *Knox v. Contra Costa Cnty.*, No. 20-cv-01449, 2022 WL 2290686, at *32 (N.D. Cal. June 24, 2022) (quoting *Jones v. U.S.*, 933 F. Supp. 894, 900 (N.D. Cal. 1996)).

Here, Trachtenberg devotes a significant portion of his expert report to discussing a definition of antisemitism and differentiating antisemitism from anti-Zionism and support for the BDS movement. *See* Report, attached to the Declaration of Jonathan R. Vaitl as Exhibit 1, at ¶¶ 4–8, 14–33. But the similarities or differences between antisemitism, on the one hand, and anti-Zionism or supporting BDS, on the other, are irrelevant to this case. Contrary to Trachtenberg's mischaracterizations,[2] this case is not, and never has been, about anti-Zionism or support for BDS and whether either of those concepts constitutes a form of antisemitism. Simply put, none of Plaintiff's claims are based on the theory that the Union is liable to her because it engaged in anti-Zionist behavior or supported the BDS movement. The question, instead, is whether the Union intentionally discriminated against Plaintiff by knowingly excluding her from full participation in its endeavors, including its committees, because of her *status as an Israeli Jew*. *See, e.g.,* Complaint at ¶¶ 19, 21, 48, 49, 59, 62-68, 71, 90, 101, 109, 110. Trachtenberg's opinions about anti-Zionism and support for BDS and his historical view of antisemitism are of no consequence to the outcome of this case, would not help the jury to determine a fact in issue, and should therefore be excluded.

**B. In Other Respects, Trachtenberg's Opinion Improperly Invades the Province of the Court and Jury**

The Court also should exclude the balance of Trachtenberg's opinion, because it would improperly usurp the role of the Court and jury by (1) stating legal conclusions about what is required to prove discrimination and whether the Union discriminated against Plaintiff based on her identity and (2) basing those legal conclusions on credibility determinations and his own

---

[2] For example, in his Report, Trachtenberg states, incorrectly, that the Complaint in this matter "consistently treats Zionism as coextensive with Jewish identity and anti-Zionism as coextensive with antisemitism." Report at ¶ 33. In reality, the Complaint contains only a few paragraphs that contain any references to Zionism, *see* ¶¶ 25, 27, 29, 85, and those references simply convey the content of certain communications that Plaintiff observed or heard about.

Pl.'s Mot. in Limine to Exclude Testimony and Opinions of Def.'s Expert Barry Trachtenberg (25-cv-00819)

weighing of the evidence.

### 1.    The Opinion States Legal Conclusions

Although the Federal Rules of Evidence allow an expert, in a given action, to testify—to some degree—about an ultimate issue, there are limits on how far an expert may go in that regard. "It remains the case that an expert may not 'improperly usurp the court's role by instructing the jury as to the applicable law.'" *In re Twitter, Inc. Sec. Litig.* No. 16-cv-05314, 2020 WL 9073168, at *3 (N.D. Cal. Apr. 20, 2020) (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)). Further, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Vicious Brands, Inc. v. Face Co., LLC*, No. 24-cv-04996, 2026 WL 276178, at *16 (N.D. Cal. Feb. 3, 2026) (quoting *Hangarter*, 373 F.3d at 1016). In the context of a case that is based on alleged discrimination, this prohibition applies to an opinion that goes to the ultimate legal question of whether certain conduct constituted discrimination. *See Sitter v. Ascent Healthcare Sols., Inc.*, No. C-09-5682, 2011 WL 2682976, at *1 (N.D. Cal. July 8, 2011) (holding that expert "should not expressly opine on [the] ultimate legal question, *e.g.*, whether Defendant's failure to act constituted discrimination, retaliation, or a failure to prevent such"); *Ibok v. Advanced Micro Devices, Inc.*, No. 5:02-cv-01485, 2003 WL 25686529, at *4 (N.D. Cal. July 2, 2003) (excluding expert testimony, in part, because the expert "proposes to render an expert opinion on the ultimate legal issue in the case, namely whether Ibok was the victim of unlawful discrimination").

Throughout his report, Trachtenberg repeatedly violates these well-established legal principles. He purports to explain what the law requires and which legal standards are "appropriate." *See* Report at ¶ 14 ("This is the same standard I apply in peer-reviewed scholarship, and it is the appropriate standard for a legal proceeding that asks whether particular conduct constitutes antisemitism as that term is properly understood); ¶ 70 ("Read in full, the plaintiff's deposition does not supply the factual foundation that the legal claims require.").

Additionally, at the Union's request, Trachtenberg repeatedly opines on whether the "documentary record" as he calls it—which consists only of a curated selection of documents that the Union's counsel cherry-picked and provided to him—demonstrates that the Union

discriminated against Plaintiff based on her identity. *See, e.g.,* Report at ¶ 1 ("I have also been asked to assess whether the Union's treatment of the plaintiff, Karin Yaniv, constitutes discrimination on the basis of her Jewish religion or Israeli national origin."); ¶ 9 ("Based on a careful review of the documentary record, the Union's conduct does not constitute antisemitism or discrimination on the basis of Jewish religion or Israeli national origin as those terms are properly understood."); ¶ 39 ("These procedural commitments further underscore that the committee was engaged in institutional research and political organizing, not in conduct directed at members on the basis of Jewish identity or Israeli citizenship"); ¶ 43 ("The form's content reflects no basis for discrimination based on religion or national origin"); ¶ 59 ("The documentary record reflects a union that was, at times, managing significant internal disagreement about its political direction in a charged and rapidly evolving situation. However, managing political disagreement within an organization, even imperfectly, is not the same as discrimination on the basis of religion or national origin."); ¶ 63 ("The record contains no evidence that the union treated those members differently because of who they are, as distinct from treating them as participants in a political disagreement about what the union should do."); ¶ 66 ("Not a single piece of evidence in this record, whether from the BDS committee documents, the union's public statements, or the plaintiff's own deposition testimony, demonstrates that the union treated its Israeli or Jewish members with hostility on account of their identity."); ¶ 75 ("Informally excluding a member from a working group on the basis of her expressed opposition to the group's aims is a judgment about political commitment, not an act of discrimination on the basis of identity.").

Whether the Union discriminated against Plaintiff based on her identity is the ultimate legal issue in this case and plainly not an appropriate subject for expert testimony. *Vicious Brands, Inc.*, 2026 WL 276178, at *16. To the extent that Trachtenberg's proposed testimony would constitute an opinion on that ultimate legal issue, *see* Report at ¶¶ 1, 9, 39, 43, 59, 63, 66, 75, it is wholly inappropriate and the Court should exclude him from presenting it at trial.

**2.      The Opinion Makes Credibility Determinations**

In addition to being replete with legal conclusions, Trachtenberg's opinion is riddled with his

own credibility determinations and his weighing of the evidence, which he undertakes, improperly, in order to "assess" Plaintiff's claims.

"Where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Elliott*, 349 F. Supp. 3d at 1006–07. Experts are not permitted to determine the credibility of witnesses or tell the jury what to believe and what not to believe. Assessing the credibility of witnesses and weighing the evidence is the province of the jury alone. *U.S. v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) *overruled on other grounds by U.S. v. Morales*, 108 F.3d 1031 (9th Cir. 1997). *See also Elliott*, 349 F. Supp. 3d at 1006 (excluding expert testimony was appropriate where the opinions in the expert's report were "merely his own assessment of the facts"); *Sanchez v. Jiles*, No. CV 10-09384, 2012 WL 13005996, at *33 (C.D. Cal. June 14, 2012) ("It is not the role of an expert witness to opine on the credibility of witnesses. Although the Advisory Committee notes to Rule 704 state that experts can testify to the 'ultimate issue,' what Lewinski has done is weigh the evidence for the jury and tell them who to believe and who not to believe. This is not an appropriate subject for expert testimony."). This rule covers instances where "the effect of the expert testimony was to 'improperly buttress' that credibility." *Binder*, 769 F.2d at 602.

Apart from the history lesson on irrelevant issues, Trachtenburg's opinion amounts to a legal brief that he crafted in order to advocate in favor of the Union. In Section IX of the Report, titled "Analysis of the Documentary Record," Trachtenberg does nothing more than characterize and interpret, in the Union's favor, certain documents that require no specialized knowledge to understand. For example, in his review of Exhibits C and D to the Complaint, which are copies of the January 2024 BDS Resolution and notes from the first two BDS Committee meetings, respectively, Trachtenberg "opines" that the resolution "reflects a principled commitment to structural analysis rather than individual targeting" and that the meeting minutes show "careful deliberation about governance, privacy, document security, and the scope of the committee's mandate." Report at ¶¶ 38–39. He further declares that the BDS committee, itself, was "a reasonable approach by a political union whose members work for an institution with significant

financial ties to the state carrying out that assault." *Id.* at ¶ 40.

In paragraphs 55–58 of the Report, Trachtenberg refers to an allegation in the Complaint that concerns Union officials chanting "From the River to the Sea, Palestine Will be Free" at protests. Despite acknowledging that the documentary evidence he reviewed did not make it possible to assess the use of this phrase in its context, Trachtenberg nevertheless asserts that Plaintiff's allegation is not credible based on how he views the "character and orientation of the Union's political speech as documented in writing." Report at ¶ 56. He thus "opines" that there is "no basis" to find that "the alleged use of this phrase, by the same actors and in the same political context, reflected antisemitic intent." *Id.* at ¶ 58.

Turning to the Union Village, Trachtenberg describes that encampment as "a progression in the visibility of the union's political commitment" and tries to discredit Plaintiff's contrary allegations by positing that the "encampment with which the union may have aligned itself was a protest against state policy and institutional investment. The union's alleged presence there expressed solidarity with that protest. It did not express, and the record contains no evidence that it was understood by its organizers to express, hostility toward any person on the basis of religion or national origin." *Id.* at ¶ 62. These assertions are not expert opinions. They are simply the Union's credibility determinations and its layperson's assessment of a narrow range of evidence, expressed through an "expert" mouthpiece.

Section X of the Report, titled "Assessment of the Plaintiff's Claims," is the most egregious example of this phenomenon. The only purpose for this section, it appears, is to attempt to impair the Plaintiff's credibility and instruct the jury that they should not believe her account. Referring to Plaintiff's deposition, Trachtenberg states: "Her account reveals that the core allegations in the complaint rest substantially on information received from unidentified third parties, on assumptions drawn from the plaintiff's own political commitments, and on the general atmosphere of the campus protests rather than on direct evidence of conduct targeting her on account of her identity." *Id.* at ¶ 70. Later, in paragraphs 73 through 77, Trachtenberg discusses certain testimony that Gabe Woolls presented during his deposition, assumes that the testimony is fully accurate and truthful, and uses it in an effort to discredit Plaintiff.

Each of these examples reflects nothing more than Trachtenberg's "own assessment of the facts." *Elliott*, 349 F. Supp. 3d at 1007. Under the guise of expert analysis, Trachtenberg presents credibility determinations and layperson's interpretations of evidence through a tilted review of cherry-picked documents that are part of the discovery record for this case. This approach is highly improper, embodies no actual expert analysis, and represents a substantial risk of unfairly prejudicing Plaintiff by telling the jury which witnesses it should believe. *See, e.g.,* Report at ¶¶ 38–39, 40, 55–58, 62, 70, 73–77. On this basis, too, the Court should exclude Trachtenberg from testifying at trial.

## III. CONCLUSION

For the foregoing reasons, the Court should exclude the Union's proffered expert, Barry Trachtenberg, from testifying at trial.

Dated: June 9, 2026                                    Respectfully Submitted,


                                                       By:    /s/ Jonathan R. Vaitl
                                                              Jonathan R. Vaitl
                                                              Attorneys for Plaintiff Karin Yaniv