Thomas Myers (SBN 120674)
Email: myers@smithmyerslaw.com
SMITH & MYERS LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: 213.613.2380
Facsimile: 213.613.2395

Danielle R. Acker Susanj (pro hac vice)
PA Attorney I.D. No. 316208
Email: drasusanj@fairnesscenter.org
Jonathan R. Vaitl (pro hac vice)
PA Attorney I.D. No. 324164
Email: jrvaitl@fairnesscenter.org
Nathan J. McGrath (pro hac vice)
PA Attorney I.D. No. 308845
Email: njmcgrath@fairnesscenter.org
Anthony R. Holtzman (pro hac vice)
PA Attorney I.D. No. 200053
Email: arholtzman@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424

Attorneys for Plaintiff Karin Yaniv

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| KARIN YANIV,<br><br>Plaintiff,<br><br>v.<br><br>LOCAL 4811, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,<br><br>Defendant. | **Case No. 4:25-cv-00819-AMO (AGTx)**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND OPINIONS OF DEFENDANT'S EXPERT BARRY TRACHTENBERG**<br><br>Date:   July 16, 2026<br>Time:   2:00 p.m.<br>Ctrm:  Oakland, Ctrm 5<br><br>Judge: The Honorable Araceli Martínez-Olguín |

In its Opposition Brief, the Union continues to mischaracterize Plaintiff's claim and misconstrue her arguments, while simultaneously proving her points.

In contending that the history portion of Trachtenberg's report is relevant to the claims in the Complaint, the Union relies on its assumption that Plaintiff is conflating anti-Zionism with antisemitism and claiming that political expression constitutes discrimination. To the contrary, when asked directly if she views criticism of Israel as inherently antisemitic, she said no. The Union has not shown otherwise; rather, the Union cites to allegations that are included for *context* and that illustrate the circumstances that existed on U.C. Berkeley's campus when Plaintiff experienced hostility and exclusion there—the type of context that is important with regard to claims of discrimination, particularly where the discrimination takes the form of creating a hostile environment. The history portion of the report, therefore, is not relevant to the claims and defenses in this case.

In addressing the legal analysis portion of Trachtenberg's report, the Union contends that he did not render legal conclusions or weigh evidence or assess witness credibility. In doing so, however, the Union *acknowledges* that Trachtenberg did *precisely* those things: he compared and weighed evidence and facts to determine whether the Union discriminated against Plaintiff and whether it did so because of her Israeli identity or for some other reason, such as her views on BDS. No matter how the Union tries to spin it, there is no question that this portion of the report is fatally flawed—as a whole—because it contains nothing but the types of legal assessments that courts have repeatedly found to be improper subjects for expert testimony.

### *Anti-Zionism as Antisemitism*

In arguing that Trachtenberg's opinion on the purported conflation of anti-Zionism with antisemitism is "critically relevant," the Union itself incorrectly conflates the *context* for Plaintiff's discrimination claims with the *claims themselves.*

The Union argues, incorrectly, that Plaintiff makes a "false equation" of anti-Zionism with antisemitism. Opp. Br. at 7. Plaintiff's deposition testimony demonstrates the opposite. When asked directly if she views criticism of Israel as inherently antisemitic, she said no:

Q.    Is it your view that any anti-Israel critique is also inherently anti-Semitic?

A.    No.

Q.    Do you have a sense of where the line is?

A.    I think it really matters on the context.

Q.    What does that mean?

A.    Not every anti-Israel – not every criticism on Israel will be, in my eyes, anti-Semitic. It depends on the context of the incident. So what is being said on what, that's what I mean by "context." The details matters.

*See* Dep. of Karin Yaniv, 137:1–11. A true and correct copy of the transcript of Plaintiff's deposition is attached to Plaintiff's Motion *in Limine* as Exhibit 1, Attachment 5. The Union's failure to understand the difference between context and claim is evident in each of the examples that it cites in its brief.

The Union, for example, cherry-picks certain paragraphs from the Complaint in an attempt to show that Plaintiff makes the very conflation that she testified she does not make. *See* Opp. Br. at 7. As Plaintiff testified, context and details matter. And, as courts have held, where discrimination arises out of a hostile environment, as alleged here, understanding the context of the discriminatory actions is crucial to determining whether the discrimination occurred. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (stating that harassment claims must be considered in the context of "all the circumstances" and that the "inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target").

The paragraphs of the Complaint that the Union cites are contextual allegations that help to depict the broader circumstances that were unfolding at U.C. Berkeley when Plaintiff experienced identity-based hostility and exclusion there. The Union, for example, cites the first paragraph of the Complaint, where Plaintiff describes its "hostility toward, and discrimination against, Israeli Jewish Union members, as it advanced an aggressively pro-Palestine and anti-Israel agenda on the campus of the University of California at Berkeley[.]" Compl. ¶ 1. The phrase that says "as it advanced an aggressively pro-Palestine and anti-Israel agenda" helps to illustrate the *circumstances* under which

the Union discriminated against Israelis as Israelis and not the *manner* in which it did so.

The Union also highlights certain parts of the parties' Joint Case Management Statement. *See* Opp. Br. at 7, 8. Here, too, the Union confuses the context of the claims with the claims themselves. The Union cites language from Page 2 of the Joint Case Management Statement, which recites facts that help to set the stage for the claims. Opp. Br. at 7. *But the Union omits the document's ensuing language that describes the actual claims*. That language provides, for example: "Plaintiff alleges that the Union excluded her and other Israeli Jewish Union members from full participation in the subcommittees. Further, Plaintiff asserts that, when she or other Israeli Jewish Union members expressed disagreement or concern about the BDS efforts, Union officials and other members responded with hostility and mockery." Joint Case Management Statement at 2–3, Dkt. No. 24.

Similarly, the language in the statement of legal issues that the Union cites, Opp. Br. at 8, describes some of the necessary context for the hostility and mockery that is already noted earlier in the Joint Case Management Statement.[1] This point is also true for the short snippet of the transcript of Plaintiff's deposition that the Union highlights. Opp. Br. at 8. Context matters for hostile environment claims. *Oncale*, 523 U.S. at 81. Although Plaintiff testified about the circumstances that were unfolding on campus and how they related to her feeling that the Union was aligned against her, the mere fact that she testified in this way does not indicate that she is conflating anti-Zionism with antisemitism, particularly when she explicitly testified to the contrary. Dep. of Karin Yaniv, 137:1–11. Nor does it mean that anti-Zionism itself, or support for BDS itself, is the *substance* of Plaintiff's claims. They are not, and the Union has not shown otherwise. Plaintiff's claims, instead, are premised on the fact that the Union intentionally discriminated against her by knowingly excluding her from full participation in its endeavors, including its

---

[1] By pointing out that the Union engaged "in BDS efforts that were designed to target individuals and organizations with any connection to Israel or Judaism," *see* Joint Case Management Statement at 3-4, Plaintiff was calling out that, at times, the Union's "BDS efforts" were not actually designed to boycott or divest from Israel as a nation-state (*i.e.*, they were not actually BDS efforts), but instead were designed to target and harass people—such as Israelis—just because they had some connection to Israel or Judaism. Plaintiff, therefore, was certainly not suggesting that support for BDS is inherently antisemitic.

committees, because of her status as an Israeli Jew.

The Union also argues that Trachtenberg's proposed testimony is relevant because a jury "may likely contain" individuals who conflate anti-Zionism with antisemitism. Opp. Br. at 9. Not only is the Union's argument based solely on speculation about what unknown and unidentified jurors may think in the future, but its concern, if it ever materialized, could easily be remedied through limiting jury instructions. *See, e.g., Comer v. Cnty. of Sutter*, No. 22-cv-00079, 2024 WL 5007507, at *4 (E.D. Cal. Dec. 6, 2024) (declining to bifurcate trial to avoid jury confusion and stating that "any possible juror confusion can be remedied with a limiting jury instruction"); *Cashatt v. Ford Motor Co.*, No. 19-cv-05886, 2023 WL 2646366, at *7 (W.D. Wash. Mar. 27, 2023) (stating that any potential for jury confusion can be "satisfactorily mitigated" through "careful jury instructions"); *Kennedy v. Las Vegas Sands Corp.*, No. 17-cv-880, 2022 WL 3084425, at *5 (D. Nev. Aug. 3, 2022) (stating that a limiting jury instruction can remedy any concern about the potential for jury confusion).

In fact, given that Plaintiff does ***not*** conflate anti-Zionism with antisemitism, Dep. of Karin Yaniv, 137:1–11, and that her claims are ***not*** based on the theory that anti-Zionism or support for BDS itself constitutes discrimination, any trial testimony from Trachtenberg on this point will only serve to plant the idea of conflation in the minds of the jury members, and will cause confusion. In other words, trial testimony from Trachtenberg will create the very problem that the Union claims it is trying to eliminate. Those dynamics do not constitute a proper basis for allowing expert testimony, and the Court should exclude Trachtenberg from testifying at trial.

### *Trachtenberg's Legal Conclusions and Weighing of Evidence*

Apart from the history lesson about anti-Zionism and the definition of antisemitism, Trachtenberg's report, in its entirety, is improper because he either makes legal conclusions, declares legal standards to support those conclusions, or weighs evidence and witness credibility to reach those conclusions—none of which is a proper subject of expert testimony.

It is not simply a matter of select objectionable sentences, as the Union suggests. Every word in this part of the report is tainted by Trachtenberg's improper usurpation of the functions of the

Court and jury and improper advocacy on behalf of the Union. *Vicious Brands, Inc. v. Face Co., LLC*, No. 24-cv-04996, 2026 WL 276178, at *16 (N.D. Cal. Feb. 3, 2026) ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law"); *Sitter v. Ascent Healthcare Sols., Inc.*, No. C-09-5682, 2011 WL 2682976, at *1 (N.D. Cal. July 8, 2011) (holding that expert "should not expressly opine on [the] ultimate legal question, *e.g.*, whether Defendant's failure to act constituted discrimination, retaliation, or a failure to prevent such"); *Ibok v. Advanced Micro Devices, Inc.*, No. 5:02-cv-01485, 2003 WL 25686529, at *4 (N.D. Cal. July 2, 2003) (excluding expert testimony, in part, because the expert "proposes to render an expert opinion on the ultimate legal issue in the case, namely whether Ibok was the victim of unlawful discrimination"); *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006 (S.D. Cal. 2018) (excluding expert testimony was appropriate where the opinions in the expert's report were "merely his own assessment of the facts"); *id* at 1006–07 ("Where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." (citation modified)); *Sanchez v. Jiles*, No. CV 10-09384, 2012 WL 13005996, at *33 (C.D. Cal. June 14, 2012) ("It is not the role of an expert witness to opine on the credibility of witnesses. Although the Advisory Committee notes to Rule 704 state that experts can testify to the 'ultimate issue,' what Lewinski has done is weigh the evidence for the jury and tell them who to believe and who not to believe. This is not an appropriate subject for expert testimony.").

There is no question that the legal analysis portion of Trachtenberg's report is riddled with this improper analysis. The Union effectively acknowledges this point in its Brief, stating that Trachtenberg assessed whether "there is any evidence that agents and representatives of the Union also engaged in antisemitic activity that might support a claim of discrimination or harassment. Undertaking that analysis requires addressing the elements of a claim under Title VII and the FEHA." Opp. Br. at 10–11.

As one example of this phenomenon, as the Union acknowledges later in its Brief, Trachtenberg took up the following question: "did the [Union's] committee take action based on

Pl.'s Reply in Support of Mot. in Limine to Exclude Testimony and Opinions of Def.'s Expert Barry Trachtenberg (25-cv-00819)

Yaniv's national origin or religion or was it motivated by a different factor: her opposition to the work of the committee and to BDS generally?" Opp. Br. at 12. Taking this approach is exactly what courts have repeatedly found to be improper as expert testimony, as answering the questions that he posed necessarily required Trachtenberg to weigh evidence, make credibility determinations, and render a conclusion on the ultimate legal question in this case: whether national origin or religious discrimination occurred. The Union, in fact, describes this process in its Brief. *See, e.g.*, Opp. Br. at 12. But, as the above controlling decisional law establishes, whether the Union's conduct amounted to political expression or unlawful discrimination is a question for the jury, not the Union's expert.

### *Conclusion*

For these reasons and the reasons stated in Plaintiff's Motion *in Limine* (Dkt. No. 59), this Court should exclude the Union's proffered expert, Barry Trachtenberg, from testifying at trial.

Dated: June 30, 2026                                  Respectfully submitted,


                                              By:    /s/ Jonathan R. Vaitl
                                                     Jonathan R. Vaitl
                                                     Attorneys for Plaintiff Karin Yaniv