MICHAEL R. FEINBERG (89196)
mrf@ssdslaw.com
MARGO A. FEINBERG (100655)
margo@ssdslaw.com
LEORA SWERDLOW (359519)
ls@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers LLP
888 West 6th Street, 12th Floor
Los Angeles, California 90017
Telephone: (323) 655-4700

Attorneys for Defendant, Local 4811
International Union, United Automobile, Aerospace, and
Agricultural Implement Workers of America

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| KARIN YANIV,<br><br>Plaintiff,<br>v.<br><br>LOCAL 4811, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,<br><br>Defendant. | Case No. 4:25-cv-00819-AMO<br><br>**DEFENDANT UNION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE: NOVEMBER 19, 2026**<br>**TIME: 2:00 P.M.**<br>**CTRM: 1301 CLAY STREET OAKLAND, CALIFORNIA COURTROOM 5**<br><br>Trial Date: April 19, 2027<br><br>Action filed: January 24, 2025 |

# TABLE OF CONTENTS


**PAGE**

**TABLE OF AUTHORITIES** ..... 3

**I. INTRODUCTION** ..... 5

**II. SUMMARY JUDGMENT MUST BE GRANTED ON YANIV'S CLAIMS OF DISCRIMINATION AND HARASSMENT ON THE BASIS OF HER IDENTITY AS AN ISRAELI JEW (ALL COUNTS) BECAUSE SHE HAS ABANDONED THEM** ..... 5

**III. YANIV'S OPPOSITION DEMONSTRATES THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS FOR TRIAL AS TO COUNT TWO** ..... 7

- **A. It is Undisputed that Plaintiff's 36 Allegations Involving Anti-Zionist Speech Are Non-Actionable and Cannot Be Considered as "Context"** ..... 7
- **B. Plaintiff Has Proffered No Admissible Evidence that Her Terms and Conditions of Employment Were in Any Way Impacted** ..... 8
- **C. No Reasonable Jury Could Find that the Conduct During Union Meetings Was Severe or Pervasive, Nor Based on Yaniv's Israeli National Origin** ..... 9
- **D. No Reasonable Jury Could Find that the Union's Responses to Rank-and-File Member Conduct Were Inadequate Under the Circumstances** ..... 12

**IV. YANIV'S OPPOSITION DEMONSTRATES THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS FOR TRIAL AS TO COUNTS ONE AND THREE** ..... 14

- **A. Yaniv Has No Evidence that the Union Failed to Address Her Concerns** ..... 14
- **B. Yaniv Still Has Not Identified a Single Similarly Situated Non-Israeli Comparator Treated More Favorably that She Was by the Union** ..... 15
- **C. Yaniv Has Produced No Admissible Evidence that the Union Discriminated Against Her in its Role as her Collective Bargaining Representative** ..... 16
- **D. The Alleged Discussion of "Anti-Normalization" Should Not Be Considered** ..... 18

**V. IN HER OPPOSITION, PLAINTIFF HAS NOT RAISED ANY GENUINE ISSUE OF MATERIAL FACT SUPPORTING HER CLAIM IN COUNT FOUR THAT THE UNION FAILED TO PREVENT DISCRIMINATION** ..... 19

**VI. CONCLUSION** ..... 19

## TABLE OF AUTHORITIES

PAGE

### CASES

*Adam v. Obama for America*,
210 F.Supp.3d 979 (N.D. Ill. 2016) .......... 9
*Asing v. Hawaii Govt. Emps. Assn.*,
Case No. 23-00335 HG-KJM, 2024 U.S. Dist. LEXIS 68424 (D.Haw. Apr. 15, 2024).......... 5, 15
*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001) .......... 11
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 5, 7, 8
*Cleveland v. Policy Mgmt. Sys. Corp.*,
526 U.S. 795 (1999) .......... 12
*Daggitt v. UFCW Int'l Union Loc. 304A*,
59 F.Supp.2d 980 (D.S.D. 1999) .......... 16, 17
*Demetris v. Transp. Workers Union*,
862 F.3d 799 (9th Cir. 2017) .......... 18
*Dixon v. Int'l Broth. of Police Officers*,
504 F.3d 73 (1st Cir. 2007) .......... 16, 17
*EEOC v. Pipefitters Assn. Local Union 597*,
334 F.3d 656 (7th Cir. 2003) .......... 16
*EEOC v. Sunbelt Rentals, Inc.*,
521 F.3d 306 (4th Cir. 2008) .......... 10
*Fisher v. Vassar College*,
70 F.3d 1420 (2d Cir. 1995) .......... 5
*Fleming v. Lind-Waldock & Co.*,
922 F.2d 20 (1st Cir. 1990) .......... 18
*Gartenberg v. Cooper Union,*
765 F.Supp.3d 245 (S.D.N.Y. 2025) .......... 8
*Irion v. US West, Inc.*,
No. 98-35320, 1999 U.S. App. LEXIS 11679 (9th Cir. 1999) .......... 9
*Jenkins v. County of Riverside*,
398 F.3d 1093 (9th Cir. 2005) .......... 5, 8
*Lam v. Univ. of Hawaii*,
40 F.3d 1551 (9th Cir. 1994) .......... 6
*Mosley v. Ala. Unified Judicial Sys.*,
562 Fed. Appx. 862 (11th Cir. 2014) .......... 6
*National R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2000) .......... 8

*Newman v. Point Park Univ.*,
No 20-cv-00204, 2022 U.S. Dist. LEXIS 60722 (W.D.Pa. Mar. 31, 2022) .... 10
*Pickern v. Pier 1 Imps. (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006) .... 18
*Square v. Potter*,
No. 07-cv-7052 PA (JTLx), 2009 U.S. Dist. LEXIS 155354 (C.D.Cal. June 22, 2009), *aff'd sub. nom. Square v. Donahoe*, 430 F. App'x 633 (9th Cir. 2011) .... 6
*Trujillo v. N. Cnty. Transit Dist.*,
63 Cal.App.4th 280 (1998) .... 19
*Vance v. Ball State Univ.*,
646 F.3d 461 (7th Cir. 2011), *aff'd*, 570 U.S. 421 (2013) .... 12
*Vasquez v. Los Angeles*,
349 F.3d 634 (9th Cir. 2003) .... 15
*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .... 18

**STATUTES**

**Federal**

29 U.S.C. §158(b) .... 18
42 U.S.C. § 2000e-2(c) .... 7, 14

**State**

Cal. Gov't Code § 12940(b) .... 14
Cal. Gov't Code § 12940(k) .... 19

**RULES**

**Federal**

Federal Rules of Evidence (FRE) 106 .... 13
Federal Rules of Evidence (FRE) 602 .... 11
Federal Rules of Civil Procedure (F.R.Civ.P.) 56(c)(1)(A) .... 8
Federal Rules of Civil Procedure (F.R.Civ.P.) 56(c)(4) .... 11

# I. INTRODUCTION

In opposing the Union's Summary Judgment Motion (Dkt No. 70-1, Memo. in Support of Defendant's Motion for Summary Judgment ["Def.'s Mot."]), Plaintiff Yaniv reverses course on her central contention that the Union discriminated against her as an Israeli Jew, identifying only her Israeli national origin as the basis for her claims. (Dkt. No. 75, Plaintiff's Memo. in Opposition to Defendants' Motion for Summary Judgment ["Pl.'s Opp'n,"] at 6) Remarkably, she also *substantially* abbreviates her factual allegations, abandoning all those concerning Union opposition to Israeli military conduct in Gaza and alleged mistreatment by a co-worker.

However, even so, Yaniv still cannot establish *prima faci*e cases of discrimination or a hostile work environment and in fact, fails to meet her burden on almost *every element* of each claim. She has not identified a single similarly situated non-Israeli Union member who was treated more favorably, nor shown how the purported discrimination affected her Union representation. She has produced no evidence that the alleged harassing conduct was severe or pervasive, that her employment was impacted, or that the Union was negligent in its response.

While Yaniv may sincerely believe that she was discriminated against, a "[Plaintiff's] 'sense of being discriminated against' is not evidence." *Fisher v. Vassar College*, 70 F.3d 1420, 1439 (2d Cir. 1995). Viewing the facts in the light most favorable to Yaniv, she has failed to establish *prima facie* cases of discrimination and hostile work environment and therefore, summary judgment must be granted for the Union on all counts.[1]

# II. SUMMARY JUDGMENT MUST BE GRANTED ON YANIV'S CLAIMS OF DISCRIMINATION AND HARASSMENT ON THE BASIS OF HER IDENTITY AS AN ISRAELI JEW (ALL COUNTS) BECAUSE SHE HAS ABANDONED THEM

A plaintiff is deemed to have abandoned a claim or theory when she fails to address it in response to a motion for summary judgment. *Jenkins v. County of Riverside*, 398 F.3d 1093 (9th Cir. 2005). Where a plaintiff brings a Title VII claim alleging discrimination based on multiple

---

[1] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)(summary judgment is mandated where the nonmoving party fails to establish an essential element of her case because, “a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

protected characteristics but addresses only one characteristic in opposing summary judgment, her prior claim of intersectional discrimination is deemed abandoned. *Mosley v. Ala. Unified Judicial Sys.*, 562 Fed. Appx. 862 (11th Cir. 2014)(plaintiff abandoned her claim of racial discrimination in which she alleged discrimination as a Black woman, where in opposing summary judgment, she identified the claim as only sex discrimination and cited no case law on intersectional discrimination) Because Yaniv failed to cite her Israeli Jewish identity as a basis for discrimination or harassment in her Opposition, she has abandoned these claims.

Yaniv sued the Union for discrimination, the creation of a hostile environment, and failure to prevent discrimination because of her race, religion and national origin. (Dkt. No. 1, Counts 1-4) Refining her theory of the case in her Motion in Limine, Yaniv described her case's primary question as, "whether the Union intentionally discriminated against Plaintiff by knowingly excluding her from full participation in its endeavors, including its committees, because of her status as an *Israeli Jew*." (Dkt. No. 59, p. 4) (*See also* Dkt. No. 3, 5, 25-28, 30, 35, 41, 95, 111, 113, 139, 142, 151, 167-170, wherein Yaniv alleged Union-supported "antisemitic" speech or conduct) In alleging discrimination based on multiple protected classes (race [undefined], religion and national origin), Yaniv brought claims of intersectional discrimination, such that her allegations regarding antisemitic and anti-Israeli conduct must be considered together. *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1562 (9th Cir. 1994)("[W]here two bases for discrimination exist, they cannot be neatly reduced to distinct components."); *Square v. Potter*, No. 07-cv-7052 PA (JTLx), 2009 U.S. Dist. LEXIS 155354, at *3 (C.D.Cal. June 22, 2009), *aff'd sub nom*. *Square v. Donahoe*, 430 F. App'x 633 (9th Cir. 2011)("when a plaintiff asserts discrimination based on multiple protected characteristics...the Court must consider a combination of all bases for discrimination.") Yaniv acknowledges as much, alternating between alleging antisemitic and anti-Israeli hostility, and arguing that in totality, this amounted to discrimination based on her Israeli Jewish identity.

Remarkably, in response to the Union's Motion, Yaniv does not include a *single reference* to alleged antisemitic treatment by the Union. Nor does she even allege that the Union discriminated against her or created a hostile environment based on her identity as an *Israeli Jew* - which, months ago, she contended was the premise of this lawsuit. Instead, she lists as the issue for

summary judgment only the questions of whether the Union discriminated and/or created a hostile work environment for her based on her Israeli national origin. (Pl.'s Opp'n at 6) She describes her protected class as an "Israeli citizen," arguing disparate treatment and a hostile environment based only on her national origin. (Pl.'s Opp'n at 16, 27) Accordingly, after spending over 20 months baselessly smearing the Union and its members as antisemitic – including in the press and before Congress - Yaniv has retreated from these allegations entirely, apparently recognizing they lack a factual basis. Yaniv has therefore abandoned her claims based on her identity as an Israeli Jew and is left only with claims of national origin discrimination and harassment.

## III. YANIV'S OPPOSITION DEMONSTRATES THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS FOR TRIAL AS TO COUNT TWO

Yaniv has failed to show she can prove the Union's liability for a hostile work environment under 42 U.S.C. § 2000e-2(c). The evidence she submits fails to establish that her terms and conditions of employment were impacted by the Union's conduct, that she experienced severe or pervasive harassment, or that the conduct she complains of occurred because she is Israeli. Because she has not and cannot produce evidence to satisfy numerous elements of her *prima facie* case and because the evidence submitted fails to establish that the Union was negligent in responding to the harassing conduct alleged, the Union is entitled to summary judgment on Count Two. *See Celotex*, *supra*, 477 U.S. at 322-323.

### A. It is Undisputed that Plaintiff's 36 Allegations Involving Anti-Zionist Speech Are Non-Actionable and Cannot Be Considered as "Context"

Yaniv's Complaint contains over 36 factual allegations pertaining to the Union and/or its members' opposition to Israeli military conduct in Gaza, which took the form of protests, written statements, and research work related to BDS (Dkt. No. 1, ¶¶ 22-34, 44, 47, 50-51, 57, 69-71, 73-81, 83, 85, 92-94, 113) and she conducted extensive discovery on this topic. (Dkt. No. 66-2, Feinberg Decl., ⁋⁋ 2-8) Yet in opposing the Union's Motion, Yaniv conceded that these allegations "cannot, [themselves], form the basis of a Title VII claim." (Pl.'s Opp'n at 25, fn. 7). Despite this considerable concession, Yaniv maintains that this Court should still "consider" these 36 allegations as "context" for her hostile environment claim, to determine "whether the harassment

was discriminatory in nature." (Pl.'s Opp'n, at 25) Yet, Yaniv continues to ignore the dispositive fact that the 36 allegations at issue simply do not involve speech or conduct related to a protected characteristic. *Gartenberg v. Cooper Union,* 765 F.Supp.3d 245, 267 (S.D.N.Y. 2025), cited by Yaniv, addressed harassment claims based on both First Amendment protected and unprotected conduct, where the protected speech - while unable to form the basis for a Title VII claim – was based on a protected characteristic. *Id., at* 268. Here, on the other hand, the political speech *is not* based on, or related to, a protected characteristic. (Def.'s Mot. at 16-20) Accordingly, there is no basis for the Court to consider these irrelevant allegations in evaluating Yaniv's claim.

**B. Plaintiff Has Proffered No Admissible Evidence that Her Terms and Conditions of Employment Were in Any Way Impacted**

Yaniv concedes that to make a *prima facie* case of hostile work environment, she must establish that the hostility she experienced was so extreme as to have altered her working conditions and have created an abusive workplace. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2000). However, in opposing this motion, Yaniv may not simply rely on her own pleadings but must instead cite to particular parts *of the record* to establish that this element is disputed. *Celotex Corp.*, *supra*, 477 U.S. at 323-324; F.R.Civ.P. 56(c)(1)(A).

Yaniv states that she has, *in her Complaint*, "…alleged a connection between the hostile environment that the Union created and her work life." These allegations are factually unsupported in some instances and irrelevant in others.[2] (Pl.'s Opp'n at 28) Notably, Yaniv has abandoned all claims that interactions with her lab mate, Anjali McNeil, contributed to a hostile environment by failing to raise these allegations in her Opposition entirely. *Jenkins*, *supra*, 398 F.3d at 1095.

While Yaniv argues that the Union construes "working environment" "too narrowly" and notes that offensive conduct need not have transpired at the workplace, she provides no support *from the record* for her claim that the Union's conduct impacted her working conditions - regardless of where the offending conduct took place. Not only has Yaniv failed to meet her burden on this element, but all admissible evidence that she has proffered illustrates that her terms of

[2] *See*, *e.g*., Dkt. No. 1, ¶¶ 115 and 93.

employment remained unaffected by the Union's conduct. (Dkt. No. 70-3, Yaniv Depo., 141:18-23; Feinberg Decl. in Support of Union Reply, Ex. A, Yaniv Depo., 139:2-6; 140: 1-12; 143: 2-15) As a result, summary judgment must be granted on Yaniv's hostile work environment claim.

### C. No Reasonable Jury Could Find that the Conduct During Union Meetings Was Severe or Pervasive, Nor Based on Yaniv's Israeli National Origin

In opposing the Union's Motion, Yaniv describes six incidents which she feels indicate that the Union created a hostile work environment for her. (Pl.'s Opp'n at 26-27) She has conceded that one of these incidents, the January 2024 BDS Resolution, cannot form the basis for a Title VII claim. (Pl.'s Opp'n at 25, fn. 7) Another, alleged comments by David Weitz and Laura Cook regarding "anti-normalization," is discussed in Section IV.D., below. The remaining incidents involve her experiences during four Union meetings. These incidents simply do not rise to the Ninth Circuit's required level of severe or pervasive harassment and her Opposition does not raise a genuine issue of material fact on this question.

In assessing "severe or pervasive," courts consider the conduct's frequency; its severity; whether it is physically threatening; whether racial slurs are used and their frequency; whether the harassment is perpetrated by supervisors; whether it is directed at the plaintiff, and whether the plaintiff witnessed it. (Def.'s Mot. at 22-24). We need not restate the litany of cases in which the Ninth Circuit has held that repeated derogatory racial slurs, mockery, yelling and hostility, and name-calling was *not* sufficiently severe or pervasive. (Def.'s Mot. at 23). As Yaniv notes, "severity and pervasiveness operate inversely to one another." (Pl.'s Opp'n at 27) *See Irion v. US West, Inc.*, No. 98-35320, 1999 U.S. App. LEXIS 11679 (9th Cir. 1999)(noting such inverse relationship, and holding four offensive incidents over four months, only two directed at the plaintiff and none of which were physically threatening, were not sufficiently severe or pervasive)

It is well-settled that "rude or impolite interactions with co-workers," without more, cannot support a hostile work environment claim. *Adam v. Obama for America*, 210 F.Supp.3d 979, 991 (N.D. Ill. 2016) (dismissing hostile work environment claim where intern's coworkers repeatedly "laughed at" her, "excluded her from group activities," and "pulled [her] hair" because while humiliating and degrading, it was not severe or pervasive). Likewise, conduct that would

objectively give rise to wounded feelings or incidents involving nothing more than rude treatment, callous behavior, or a difference of opinion will not satisfy the severe or pervasive standard. *EEOC v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315-16 (4th Cir. 2008) Critically, "...disagreements on a contentious geopolitical conflict do not in and of themselves form the basis of a hostile work environment claim." *Newman v. Point Park Univ.*, No 20-cv-00204 * 80, fn. 16, 2022 U.S. Dist. LEXIS 60722 (W.D.Pa. Mar. 31, 2022)(Israeli Jewish plaintiff failed to allege severe or pervasive harassment based on shunning, evasion, and rudeness from co-workers due to her opposition to BDS and employer's failure to protect her from political speech which she considered antisemitic).

Yaniv does not allege physical assault or intimidation, or that she heard a racial slur, let alone one directed toward her. (Def.'s Mot. at 24) She never felt "personally targeted" as an Israeli and cannot recall anyone commenting on her nationality. (Dkt. No. 70-3, Yaniv Depo., 58:8-20; 59:2-5) No one laughed, booed, or mocked her. Instead, she cites her experiences in the following Union meetings as evidence of "discriminatory intimidation, ridicule or insult:" (1) the January 2024 Monthly Membership Meeting (MMM), where some Union members, whom Yaniv hadn't met, appeared to know her name and job title which, *in and of itself*, made the meeting "hostile and intimidating"[3] (Pl.'s Opp'n at 12); (2) the March 2024 MMM, where an unidentified, unspecified number of Union members "booed" after Israeli member Neta Shimoni gave a comment "in regards to…the BDS resolution…the general Union-led actions and the statement that was given by the Union" (Dkt. No. 70-5, Shimoni Depo., 101:13-23); (3) the April 2024 MMM, where an unidentified, unspecified number of attendees laughed and one commented, "LMFAO" on Zoom (a term Yaniv did not understand at the time she read it) after Israeli member Yael Nidam spoke in response to the proposed April BDS Resolution (Dkt. No. 70-9, Nidam Depo., 21:19-25), and where one unidentified member allegedly told Nidam that she had no right to an opinion on BDS because she was Israeli; and (4) the February 2024 BDS EC Meeting, where members discussed whether individuals should be required to abide by meeting rules to attend future committee

---

[3] Notably, the primary responsibility of a union organizer, and rank-and-file members of *any* union organizing committee, is to connect members with one another and strengthen relationships among the membership, which necessarily entails learning the names and job titles of all members (and particularly, of new members).

meetings. (Dkt. No. 75-4, Shimoni Depo., 86:13-18)

Yaniv felt that these meetings were hostile because most members in attendance supported BDS, a position Yaniv did not share. But participating in Union democracy, like any democracy, does not guarantee that each participant's desired outcome will be reflected in the will of the majority. Yaniv was unable to mobilize enough like-minded BDS opponents to offset the consensus in the room – this shortcoming should not be confused with Union hostility or exclusion. Viewing the facts in the light most favorable to Yaniv, the number and severity of these allegations does not come anywhere *close* to the conduct in the *Manatt*, *Kortan*, *Robles* and *Sanchez* cases (cited in Def.'s Mot. at 23) which the Ninth Circuit found was *not* severe or pervasive. Summary judgment must therefore be granted for the Union.

Moreover, the Union objects to the following line in Yaniv's declaration: "After [Ms. Nidam] spoke, a member stated that Ms. Nidam, as an Israeli, had no right to an opinion on the Israel-Palestinian conflict and proposed boycott, divestment and sanctions efforts." (Dkt. No. 75-13, Yaniv Decl., ¶ 9) The Union moves to strike this line under FRE 602 & F.R.Civ.P. 56(c)(4) because Yaniv has not asserted that *she* heard the alleged statement, nor has she identified its speaker.

Finally, Yaniv still has not produced evidence to raise a triable issue as to whether these incidents occurred *because of* the Israeli national origin of herself or of her colleagues. *See Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001) (plaintiff could not succeed on a sexual harassment claim because the harassment –frequent mocking and display of a sexually explicit photo - was not gender-based but instead motivated by a heated union dispute). While Yaniv believes that her colleagues were laughed at because they spoke about their experiences "as Israelis," *their own testimony* reveals that they repeatedly spoke in response to proposed BDS resolutions (*See*, Dkt. No. 70-5, Shimoni Depo., 101:13-102:5, Ex. 5; Dkt. No. 70-9, Nidam Depo., 21:19-25) – which Yaniv has *already conceded* cannot form the basis of a Title VII claim. (Pl.'s Opp'n at 25, fn.7) In sum, Yaniv has produced no evidence that the conduct she alleges –individually or together - was severe or pervasive, or based on her national origin. Summary judgment must therefore be granted for the Union on her hostile environment claim.

**D. No Reasonable Jury Could Find that the Union's Responses to Rank-and-File Member Conduct Were Inadequate Under the Circumstances**

Yaniv complains of conduct which was perpetrated by rank-and-file Union members, for which the Union may only be liable if it knew and failed to adequately respond in a manner "reasonably calculated to end the harassment," considering the severity of the underlying conduct. (Def.'s Mot. at 24-25) *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011), *aff'd,* 570 U.S. 421 (2013)(Title VII does not require an employer's response to successfully prevent subsequent harassment, though it should be reasonably calculated to do so").

Yaniv claims that Union leaders' responses to meeting participant behavior was "inadequate." (Pl.'s Opp'n at 29) However, she admits that during both the March and April 2024 MMMs, Tanzil Chowdhury, the meeting's Chairperson, instructed the crowd to cease its behavior, respect the speaker, and abide by the Union's Code of Conduct (*See*, Dkt. No. 75-2, Yaniv Depo., Ex. 3), and did so multiple times. (Dkt. No. 70-17, Chowdhury Decl., ¶ 12; Dkt. No. 75-4, Shimoni Depo., 44: 7-12, 45: 2-5; Dkt. No. 70-3, Yaniv Depo., 127:10-12) The Union therefore objects, and moves to strike Yaniv Decl., ¶ 9, Lines 11-12 ("Union leaders present at the meeting did not stop the hostility") because it directly contradicts her sworn deposition testimony. *See*, *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806 (1999)("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement….without explaining the contradiction.") As Chowdhury explained to Yaniv, the Chairperson has no authority to discipline members for speaking out of order. (Dkt. No. 70-22, Chowdhury Decl., Ex. E) No reasonable jury could conclude that Chowdhury's instructions were not "reasonably calculated to end the [alleged] harassment." *Vance, supra*.

Yaniv alleged that the January 2024 MMM was "hostile and intimidating" because Union members, whom she had not yet met, *knew her name and job title*. (Pl.'s Opp'n at 12) While this is indisputably insufficient grounds on which to base a harassment allegation, Yaniv doubles down, arguing that a text exchange between Vice President Sarah Arveson and Union Organizer David Weitz proves that the Union "knew of" and "supported" this hostile environment. In the text, Arveson wrote, "Neta and Karin gonna leave the union before we even start talking about Palestine

with this crowd" and Weitz replies, "I can't work miracles."[4] Without evidence, Yaniv argues this is a "private acknowledgement" that the meeting was hostile, and that such hostility was "desirable" – though the reality is precisely the opposite.

First, the Union objects to the admissibility of this exchange (Vaitl Decl., Ex. K) under FRE 106 because Yaniv has introduced only part of an incomplete text chain. Second, Weitz's statement that he "can't work miracles" actually indicates his commitment to going far above and beyond the call of duty of an organizer to ensure that Yaniv and Shimoni felt included and welcome at this meeting. This is confirmed when the two messages are viewed within the larger text thread. In the message *immediately following* Weitz's text, he asked Arveson how the debate over the BDS Resolution went. Arveson replied, "It went great" and "It was all respectful and well handled." In response, Weitz asked, "Do Neta and Karin seem upset?" Weitz testified as follows:

> Q: Why were you asking that question?
>
> A: Well, because I cared about whether they were upset or not. You know, I know that a lot of this was difficult for them; particularly…given --given their deep personal connections to the -- to the issue. And…I -- I really feel a responsibility for making sure that…all postdocs and academic researchers… feel -- feel good as -- as much as I -- as I possibly can. And… I -- I genuinely felt for them, and… their -- their personal turmoil around -- around this topic. And so I was – and… I sensed that they would probably be upset about… a vote like that not going their way, and so…I was asking Sarah to see -- yeah.

(Feinberg Decl. ISO Union Reply, Ex. B, Weitz Depo., 88:13-25, Ex. 10) Far from illustrating support for, or acquiescence in, a hostile environment, the evidence illustrates the extraordinary care that Weitz and Arveson put into supporting her. No reasonable jury could find otherwise.

Finally, regarding the February 2024 BDS EC meeting, there is no evidence of hostility or harassment towards Yaniv based on her nationality, and the Union had no corresponding duty to respond to non-existent harassment. (Dkt. No. 75-4, Shimoni Depo., 86: 8-18.) The Court should grant summary judgment for the Union because the evidence submitted fails to establish that the Union was negligent in responding to the harassing conduct alleged.

---

[4] On page 12 of her Opposition, Yaniv provides a citation for this exchange: "Weitz Depo: 87: 6-24, Ex. 11." However, neither the transcript nor exhibit cited relate to this text exchange, nor did Yaniv's counsel question Weitz about this exchange during his deposition.

## IV. YANIV'S OPPOSITION DEMONSTRATES THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS FOR TRIAL AS TO COUNTS ONE AND THREE

The evidence submitted with Yaniv's Opposition fails to establish either that the Union treated her less favorably than similarly situated non-Israeli members or that the Union's alleged disparate treatment affected its representation of her. Because Yaniv has not and cannot produce sufficient evidence to satisfy her *prima facie* case under 42 U.S.C. § 2000e-2(c) and Cal. Gov't Code § 12940(b), the Union is entitled to summary judgement on Counts One and Three.

### A. Yaniv Has No Evidence that the Union Failed to Address Her Concerns

In support of her disparate treatment claim, Yaniv alleges that the Union failed to address Israeli Union members' concerns. (Pl.'s Opp'n. at 16) But there is no such evidence and in fact, the record evidence of more than seven in-person meetings between Yaniv and Union officials before she even became a Union member, along with numerous email exchanges and phone conversations, illustrate precisely the opposite. (Dkt. No. 70-11, Jaime Decl., ¶¶ 9-11; Dkt. No. 70-13, Jaime Decl., Ex. B; Dkt. No. 70-14, Jaime Decl., Ex. C; Dkt. No. 70-3; Dkt No. 70-3, Yaniv Depo., 73: 3-9; 73:18-24; Dkt. No. 70-5, Shimoni Depo., Ex. 4)[5]

In her response to the Union's Motion, Yaniv simultaneously argues both that the Union ignored her concerns, *but also* that the Union's responses *addressing her concerns* were actually a "false front." (Pl.'s Opp'n. at 18) Unable to ignore the extensive attention that Union leaders paid to her and her Israeli colleagues, she theorizes that these meetings were "meaningless" and that the Union merely "created the appearance" of listening to her. (Pl.'s Opp'n. at 18) There is simply no merit to these ridiculous assertions. Union leaders – many of whom were also employed full-time by the University of California (UC), and many of whom *also* have their own deeply personal connections to the Israeli-Palestinian conflict – spent considerable time and effort in listening to and addressing Yaniv's concerns. Any allegations that this effort was a "false front" are unfounded and the Court should disregard them entirely.

[5] To be clear, we are not suggesting that the Union addressed the issues raised in a way that *agreed* to the demands made by Yaniv and her Israeli colleagues. Rather, our point is that the Union listened and responded to her requests for dialogue. She was not ignored.

**B. Yaniv Still Has Not Identified a Single Similarly Situated Non-Israeli Comparator Treated More Favorably that She Was by the Union**

To make out a *prima facie* claim of discrimination, Yaniv must show that a similarly situated union member, *outside of her protected class – i.e.* a non-Israeli member of the UC bargaining unit represented by Local 4811 - was treated more favorably than she was "under nearly identical circumstances."[6] *Vasquez v. Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *see*, *Asing v. Hawaii Govt. Emps. Assn.,* Case No. 23-00335 HG-KJM, *13, 2024 U.S. Dist. LEXIS 68424 (D.Haw. Apr. 15, 2024). In her Opposition, Yaniv has presented no such evidence. The evidence that she does reference is extremely limited and off-point.

Yaniv claims, as evidence of disparate treatment, that the Union changed internal rules to block Israeli member participation when Arveson told her that anyone who wanted to meet with Union officials needed to become a member beforehand (Pl.'s Opp'n. at 16, 20). First, the Union presented uncontradicted evidence of the meetings, calls and emails exchanged with Yaniv before she joined the Union. (Def.'s Mot. at 9-10). Further, and more importantly, Yaniv has presented no evidence that Arveson did *not* give the same direction to similarly situated non-Israeli bargaining unit members.[7]

Yaniv further claims, as evidence of disparate treatment, that Shimoni was not allowed to make a proposal at the January 2024 MMM, despite following Chowdhury's instructions. (Pl.'s Opp'n. at 17, 20) First, this is not a class action, so evidence that Shimoni's request was denied is not direct evidence of discrimination against Yaniv. Second, Yaniv has submitted no evidence of Chowdhury's alleged instructions or evidence that Shimoni followed such instructions. Third, Yaniv submitted no evidence as to why, having been informed of the procedural impediments to her proposal, Shimoni did not correct such deficiencies and resubmit her proposal at the February 2024 MMM. And fourth, Yaniv has no evidence that *non*-Israeli Union members were permitted to submit proposals despite their noncompliance with such alleged revised internal rules.

---

[6] Yaniv consistently seems to misunderstand the disparate treatment standard, identifying only other *Israeli* Union members she believes were *also* treated unfavorably by the Union.

[7] In this context, a "similarly situated bargaining unit member" is a non-Israeli individual represented by the Union, who had already engaged in an extended dialogue with numerous Union officials about the Union's position on the Israel-Palestine conflict without becoming a member.

In her Opposition, Yaniv also claims that during the April 2024 MMM, while Nidam was speaking via Zoom, Chowdhury interrupted her to announce a new rule that any speaker attending virtually had to show their face on the screen before the Union would permit them to speak. (Dkt. No. 75-13, Yaniv Decl., ¶ 9) Yaniv claims that this requirement was not part of the Union's membership meeting protocol and was allegedly not imposed on Union members "while speaking in support of Palestinians or criticizing Israel and Israelis." (Dkt. No. 75-13, Yaniv Decl. ¶ 8 & Ex. C) There are several problems with this evidence. First, there is no evidence that this alleged new protocol actually prevented Nidam from speaking. Second and relatedly, there is no evidence as to when this alleged new protocol was implemented – Nidam testified that she gave *several comments* during this meeting. (Feinberg Decl. ISO Union Reply., Ex. C, Nidam Depo., 22: 2-6) If this alleged new rule was implemented while she gave her third comment, for example, the allegation that she was prevented from speaking is moot. Third, and more importantly, there is no evidence that this requirement was imposed to chill the rights of Union members who were *Israeli* (*i.e.*, on the basis of national origin) as opposed to those Union members, regardless of national origin, who were supportive of Israel's actions in Gaza and/or opposed to BDS. Again, a review of her Opposition reveals that Yaniv has not identified a single similarly situated *non-Israeli* comparator who was treated more favorably than Yaniv was treated *in any manner* and summary judgment must therefore be granted to the Union on her discrimination claims.

**C. Yaniv Has Produced No Admissible Evidence that the Union Discriminated Against Her in its Role as her Collective Bargaining Representative**

In its opening brief, the Union argued that "Title VII prohibits discrimination by a union "in the performance of its agency function, but not otherwise." *EEOC v. Pipefitters Assn. Local Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). In response, Yaniv argues "that the issue [here] is *not* workplace discrimination, but rather discrimination that took place in *Union* spaces," citing *Daggitt v. UFCW Int'l Union Loc. 304A*, 59 F.Supp.2d 980, 984 (D.S.D. 1999) and *Dixon v. Int'l Broth. of Police Officers*, 504 F.3d 73 (1st Cir. 2007).

However, these cases are both off point and neither respond to the Union's argument – that even in cases of discrimination in *union spaces*, there must be a connection between the

discrimination and the union's role as collective bargaining representative. In *Daggett*, the plaintiff was an elected union treasurer and a part-time paid business agent. The union *was* her place of employment, from which she was discriminatorily discharged. The court held the union liable precisely because it *was* a case of workplace discrimination.

Second, although *Dixon* involved underlying allegations of sexual harassment (*i.e.*, discrimination), it is primarily a case about retaliation against the plaintiff for filing discrimination charges. In that setting, the court did not need to find an "adverse *employment* action" to hold the union liable under Title VII because there already was an "adverse action" (*i.e.,* the retaliation) and therefore, no nexus with plaintiff's representation was required. *See*, *Dixon* at 81-82. On the other hand, there is no allegation of retaliation in the instant case, and so a showing of "adverse *employment* action" is both necessary and missing.

Assuming a union may only be liable for discrimination in its agency role, Yaniv next attempts to connect allegedly discriminatory conduct to this role by explaining that "much of the conduct took place in the BDS EC, which was formed for the very purpose of establishing the priorities that the Union would advance in its collective bargaining with Berkeley – the very essence of its agent function." (Pl.'s Opp'n at 23)

This is indisputably false. The BDS EC was formed "to investigate and document our current financial and labor ties to the occupation and weapons trade with Israel." (Dkt. No., 70-23, Jaime Depo., Ex 2) Nothing in the Resolution establishing the BDS Exploratory Committee discusses its purpose as "establishing the priorities that the Union would advance in its collective bargaining with Berkeley." In fact, the Union, a statewide organization that represents over 60,000 workers across ten UC campuses and the Lawrence Berkeley National Laboratory, bargains across all campuses with the UC Office of the President; it *does not even bargain "with Berkeley*" at all.

Moreover, the Union's bargaining priorities are developed through a democratic process involving extensive member input and, pursuant to its Bylaws, all bargaining priorities must first be ratified by the statewide membership body. (Dkt. No. 70-15, Union Bylaws at 13) A campus-level committee established to research BDS has no authority to establish statewide bargaining priorities, nor has BDS ever been adopted as a bargaining demand. (Feinberg Decl. ISO Union

Reply., Exs. D & E, Jaime Depo., 56: 8-24; 57:11-19; Chowdhury, 16:11-14). There is no merit to the notion that the BDS EC had any nexus to the Union's role as Yaniv's bargaining representative.

Lastly, relying on *Demetris v. Transp. Workers Union*, 862 F.3d 799, 804 (9th Cir. 2017), Yaniv argues that by supporting the BDS-based "anti-normalization" concept, the Union was not committed to serving the interests of *all* members. *Demetris* turns on the Union's duty of fair representation ("DFR") under the National Labor Relations Act, 29 U.S.C. §158(b), and is not applicable to Yaniv's Title VII or FEHA claims. Still, in citing a DFR case, Yaniv has conceded that to bring a discrimination claim, she must establish that the Union discriminated against her in its representation of her – which she cannot do.

**D. The Alleged Discussion of "Anti-Normalization" Should Not Be Considered**

In her Opposition, Yaniv alleges for the first time that a conversation which took place on December 15, 2023 is evidence of disparate treatment and a hostile work environment. (Pl.'s Opp'n at 16, 18, 23-24, 26, 27, 29) She alleges that in this meeting between David Weitz, Laura Cook, Shimoni and herself, Shimoni asked Weitz and Cook why the Union excluded Israelis from discussions about its public statements on Israel/Palestine and BDS resolutions. (Dkt. No. 75-4, Shimoni Depo., 20:11-21:24) Yaniv states that it is "uncontested" that both Cook and Weitz replied, "Union leaders wanted to exclude Israelis to avoid 'normalizing' their participation in actions related to the October 7 attack." (Dkt. No. 75-4, Shimoni Depo., 21: 1-2)

Such evidence of the Union's alleged "embrace" of anti-normalization (Pl.'s Opp'n at 23, 27) however, is inadmissible because Yaniv has raised this allegation for the *first time* in opposing the Union's Motion. *Pickern v. Pier 1 Imps. (U.S.), Inc*., 457 F.3d 963, 965 (9th Cir. 2006)(a party cannot oppose summary judgment by raising new factual allegations, and courts routinely reject such allegations which were not pleaded in the complaint); *See also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)(quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."). Despite including this alleged statement as evidence of discrimination *twelve times* in her Opposition, Yaniv did not raise it once in her lengthy Complaint or the Case Management Conference Statement, nor has she attempted to amend her Complaint at

any point during this litigation to include this allegation.

Yaniv contends that the alleged statement by Weitz and Cook is an "admission" that Union officials "singled out and excluded Israelis from participating in its actions that concerned the Israeli-Palestinian conflict." (Pl.'s Opp'n at 16) But the clear, undisputed record illustrates that Yaniv engaged extensively with Union officials on this topic, spoke in Union meetings in which BDS resolutions (drafted by rank-and-file Union members) were debated and joined Union committees related to BDS. This alleged statement concerning "normalization" was quite obviously inoperative when it came to Yaniv. Because there is no evidence that Yaniv was discriminated against, or treated less favorably, this alleged statement serves no purpose and should be given no weight and found irrelevant and inadmissible.

## V. IN HER OPPOSITION, PLAINTIFF HAS NOT RAISED ANY GENUINE ISSUE OF MATERIAL FACT SUPPORTING HER CLAIM IN COUNT FOUR THAT THE UNION FAILED TO PREVENT DISCRIMINATION

As demonstrated by the Union in its Motion and supporting evidence herein, Yaniv's claim for failure to prevent discrimination or harassment necessarily fails because she cannot establish her underlying claims. *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal.App.4th 280, 289 (1998). Moreover, as shown above, it is undisputed that the Union went above and beyond its duty in responding to the alleged inappropriate meeting conduct of rank-and-file members. Therefore, summary judgment must be granted on Yaniv's claim under Cal. Gov't Code § 12940(k).

## VI. CONCLUSION

For all of the foregoing reasons, as well as those presented in its opening moving papers, Defendant Union respectfully submits that this Court should grant its Motion for Summary Judgment and enter judgment in its favor on all of Plaintiff's claims.

//

//

//

//

//

DATE: October 2, 2026

Respectfully submitted,

SCHWARTZ, STEINSAPIR, DOHRMAN
& SOMMERS LLP
MICHAEL R. FEINBERG
MARGO A. FEINBERG
LEORA SWERDLOW

By */s/Michael R. Feinberg*
MICHAEL R. FEINBERG
Attorneys for Defendant,
Local 4811, International Union, United
Automobile, Aerospace, and Agricultural
Implement Workers of America